UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES CHRISTOPHER PORTILLO GARCIA (A-206-767-738),

Petitioner,

v.

WARDEN, Central Valley Annex,

Respondent.

No. 1:26-cv-06983 TLN CSK

FINDINGS AND RECOMMENDATIONS

Petitioner James Christopher Portillo Garcia (A-206-767-738), a native and citizen of Honduras who is proceeding without counsel, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner entered the United States on May 28, 2014, was initially detained by Customs and Border Protection inside the United States and released on May 31, 2014 on his own recognizance pursuant to 8 U.S.C. § 1226. On or about November 6, 2025, petitioner was re-detained by Immigration and Customs Enforcement ("ICE") and has been in continuous detention since this date. This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND[2]

Petitioner is a 27-year old citizen and native of Honduras. (ECF No. 1 at 6; ECF No. 7-1 at 1) On May 28, 2014, petitioner, while still a minor, entered the United States without inspection and was detained by U.S. Customs and Border Protection. (ECF No. 1 at 6; ECF No. 7-1 at 2) On May 31, 2014, petitioner was released on his own recognizance under 8 U.S.C. § 1226 (Section 236 of the Immigration and Nationality Act ("INA")). (ECF No. 1 at 6, 156.) Petitioner was issued a Notice to Appear in INA Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[3] (ECF No. 1 at 6, 153; ECF No. 7-1 at 2.) Thereafter, petitioner's removal proceedings were administratively closed on June 20, 2023. (ECF No. 1 at 6, 49.) After his release from ICE custody, petitioner lived in the United States without incident for over twelve years establishing employment, community, and family ties, including having one U.S. citizen child. (ECF No. 1 at 6.)

On October 14, 2025, petitioner was arrested by local authorities in Florida and came again to ICE's attention. (ECF No. 1 at 7.) On June 29, 2026, petitioner pled no contest to two misdemeanors: (1) disorderly intoxication, and (2) resisting an officer without violence under Fla. Stat. § 843.02, in which the judge ordered adjudication withheld, and required petitioner to pay costs. (ECF No. 1 at 90, 94; see ECF No. 7-3 at 7.) Petitioner's other charges were for bribery under Fla. Stat. § 838.015, which was not prosecuted, and neglect of child without great bodily harm, under Fla. Stat. § 827.03(2)(D), which was dropped/abandoned. (ECF No. 7 at 104; ECF No. 7-3 at 6.) Besides the October 2025 incident, petitioner has no other criminal history. (See ECF No. 1; ECF No. 7-1 at 3.)

Petitioner asserts that he has been continuously detained by ICE since November 2025, including a temporary transfer back to Florida for his criminal case. (ECF No. 1 at 7.)

---

[2] Petitioner filed a verified habeas petition. (ECF No. 1 at 44.) A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3] Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

Respondent contests this fact and asserts that petitioner has been in ICE custody since June 2026. (ECF No. 7 at 2.) As support, respondent cites an administrative arrest warrant (Form I-200) that ICE issued petitioner on June 30, 2026. (Id.; ECF No. 7-4). Respondent also argues that the Form I-213 suggests that ICE placed a detainer on petitioner in October 2025, around the time petitioner was arrested by local authorities. (ECF No. 7 at 2; ECF No 7-1 at 2.) However, petitioner provided multiple documents, including government records, that support his contention that he has been in ICE custody since November 2025, including: (1) Department of Homeland Security's ("DHS") April 2026 motion to recalendar immigration proceedings stating that petitioner "re-entered ICE custody" on November 6, 2025 and was then currently detained at the "Joe Corley Processing Center in Conroe, Texas" (ECF No. 1 at 61); (2) DHS' notice to EOIR of petitioner's address in ICE detention at the "Joe Corley Processing Ctr" at 500 Hilbig Rd, Conroe, TX 77301 indicating that he was transferred there on November 6, 2025 (Id. at 62); (3) April 2026 Florida writ of habeas corpus for petitioner to be brought back to Florida to complete his criminal proceedings indicating that petitioner "shall remain at all times in custody as a prisoner of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT" (Id. at 88) (emphasis in original); and (4) petitioner's commissary deposit records dated between November 11, 2025 and May 21, 2025 while he was detained at 500 Hilbig Rd, Conroe, TX 77301 (ECF No. 8 at 32-39). Respondent did not address these documents. Accordingly, the Court finds that petitioner has been in ICE custody since at least November 6, 2025.

On July 27, 2026, an immigration judge withdrew petitioner's custody redetermination request. (ECF No. 7 at 2; ECF No. 7-5.) On August 27, 2026, an immigration judge denied bond. (ECF No. 7 at 2; ECF No. 7-5.)

## II. PROCEDURAL BACKGROUND

On September 1, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On September 9, 2026, respondent timely filed an answer. (ECF No. 7) On September 17, 2026, petitioner filed a reply. Briefing is now complete.

///

///

## III. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner, whose pro se pleadings are liberally construed, challenges his continued detention based on the violation of the following: (1) the Fifth Amendment procedural due process clause; and (2) the INA; and (3) the Administrative Procedure Act ("APA"). (ECF No. 1 at 3, 11, 16.) In the response to the petition, respondent argues that petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a) and has been afforded all due process without deprivation of any statutory or constitutional rights. (See ECF No. 7.)

### A. Due Process Claim

The parties do not dispute that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations. The Court agrees and notes that petitioner was expressly released on his own recognizance pursuant to 8 U.S.C. § 1226, and he has resided in this country for over twelve years since his release in May 2014. (ECF No. 1 at 156.) 8 U.S.C. § 1226(a) "and its regulations guarantee noncitizens detained under that provision multiple levels of 'substantial

procedural protections' against the erroneous deprivation of their liberty[,]" including arrest upon a valid warrant, notice of the basis for continued detention, an initial custody determination by an immigration officer, and a bond hearing. Garcia-Maya v. Blanche, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *5 (D. Nev. July 7, 2026) (quoting Jacobo-Ramirez v. Mullin, 834 F. Supp. 3d 1073, 2026 WL 879799 (D. Nev. 2026)).

Petitioner argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and he has a liberty interest in not being incarcerated after prior release without pre-custodial hearing or notice. (ECF No. 1 at 3, 156.) Respondent argues petitioner's due process claims fail because petitioner was given a bond hearing in August 2026. (ECF No. 7 at 3-4.) Respondent's argument does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 818 F.Supp.3d 1141, 1151 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to

arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on his own recognizance in May 2014 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over twelve years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. During this time, petitioner lived with his family, had a U.S. citizen child, built community ties, and was employed. (ECF No. 1 at 6.) This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue

a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th at 1206; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from

imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over twelve years, petitioner was free from custody before his re-detention. During this time, petitioner lived with his family, had a U.S. citizen child, built community ties, and was employed. (ECF No. 1 at 6.) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent notes that an immigration judge denied bond in August 2026 finding that petitioner was a danger and flight risk.[4] (ECF No. 7 at 1.) In addition, respondent notes that petitioner has a criminal record, including convictions for resisting an officer and disorderly intoxication.[5] (Id. at 2.) Here, petitioner was never provided a pre-detention hearing or notice of revocation of his prior release on his own recognizance. Additionally, petitioner has been detained since November 6, 2025, but was not issued an administrative arrest warrant until nearly eight months after his detention, or offered an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community until over nine months after his detention. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). If, at this hearing,

[4] The immigration judge's decision indicates that bond was denied for "Danger/Flight" without any further explanation. (ECF No. 7-6)

[5] The record indicates that the resisting officer charge was "without violence." (ECF No. 1 at 90, 94; ECF No. 7-3 at 7.)

the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F.4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Failure to demonstrate compliance with any of these procedural requirements independently violates due process because it "prevents the court from concluding that petitioner is properly 'detained on that basis.'" Zurita Navarro v. Warden, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (quoting J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025)); see also Cornejo Gonzalez v. Chestnut, No. 1:26-cv-07118-DAD-JDP, 2026 WL 2666229, at *1 (Sept. 10, 2026); Hernandez Campos v. Warden, No. 1:26-cv-06872-DAD-JDP, 2026 WL 2655224, at *1 (Sept. 9, 2026); Meza Patraca v. Andrews, No. 1:26-cv-06646-DAD-JDP, 2026 WL 2568905, at *1 (Aug. 31, 2026).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but detaining petitioner who was previously released on his own recognizance without a hearing at the outset of detention is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over twelve years on release, and he has no violent criminal record. See Pinchi, 792 F. Supp. 3d at 1036.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on

parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondent has not addressed petitioner's prior release and points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on the due process claim. Given that petitioner's detention is unlawful, the appropriate remedy is petitioner's immediate release. See Zurita Navarro, 2026 WL 2294963 at *3.

**D. Petitioner's Other Statutory Claim for Relief**

Because the Court recommends granting the petition on the due process claim, the Court need not address the additional statutory claim raised in the petition. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release"). Petitioner is entitled to the habeas relief he seeks based on the court's ruling as to his due process claim.

**VI. CONCLUSION**

In summary, the Court recommends that the petition for writ of habeas corpus be granted on petitioner's due process claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be ordered to IMMEDIATELY release petitioner James Christopher Portillo Garcia (A-206-767-738) and be ordered to provide petitioner with a copy of

the release order at or near the time of release. If respondent has custody of petitioner's personal possessions and documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation constitutionally adequate bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
4. Given petitioner's pro se status, respondent be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.
5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 19, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/port6983.2241.imm.release/10